# EXHIBIT 2
Declaration of Michael Madden

UNIVERSITY OF WASHINGTON SCHOOL OF MEDICINE



May 22, 2002

**To:**        Fanaye Turner
              Director of Education and Outreach
              UWEB

**From:**      Melissa Cochran  *mjc*
              Acting Director of Human Resources
              Office of the Dean
              School of Medicine

**Re:**        *Letter of Reprimand & Workplace Conduct Agreement*

I am firmly committed to ensuring a professional, comfortable, and safe work environment for all UWEB and Bioengineering employees. To that end, I want to address the incident that occurred on April 18, 2002.

In the afternoon of Thursday, April 18, 2002, you and your Program Coordinator, Kahreen Tebeau, were engaged in a conversation regarding some emails sent by Ms. Tebeau in error. Evidently, tempers flared during this discussion and both of you began yelling extremely loudly. According to three witnesses who came out into the hallway because they heard yelling, Ms. Tebeau stepped out from the doorway of her office, at the opposite end of the hallway, with her hands up and said, "Everyone, I just want you to know that Fanaye just grabbed me and shook me because I told her she had a bad attitude."

In your discussion on Monday, April 22, with Debbie Flores, Human Resource Administrator, COE Dean's Office, you stated that you did not grab Ms. Tebeau but placed your hand on her arm and told her to calm down because she was getting too excited. You did say that the two of you were yelling at each other.

Ms. Flores found in conducting interviews with other UWEB staff, that in the last 3 months, many of them had experienced unpleasant exchanges with you during which you seemed stressed. During those time, they indicated that you tended to speak sharply, condescendingly, and in demanding tones to them.

During the meeting Ms. Flores had with you, you acknowledged that for several reasons, you have been stressed lately but denied having any problems with anger.

Date 10/27/06 Exhibit # 28
Case *Turner V. UW*
Deponent *Fanaye N. Turner*
Reporter TIA REIDT
          Naegeli Reporting Corporation
          (800) 528-3335  FAX (503) 227-7123

As a manager in UWEB, you represent the leadership in the Center, in the Department of Bioengineering and in the College of Engineering. The interaction on April 18, with Ms. Tebeau, which including yelling and touching her during a heated argument, is not representative of the type of behavior expected at the Center, and it cannot happen again. From this point forward, and for the duration of your employment, I expect your exchanges with staff in the course of your daily work to be professional and respectful in tone. If you observe staff having performance issues or other problems in the workplace, you need to discuss them with Rita Jensen, or the UWEB Administrator, so they may assist you with a plan for addressing them. You are always welcome to access Health Sciences Human Resources to further discuss issues.

My expectations in the workplace are:

- All staff are to treat each other with dignity and respect, and pay special attention to avoid any and all actions, gestures, body language or facial expressions that may be viewed as hostile or angry;

- All staff are to maintain a level of professionalism in all interactions, and not speak to each other in raised voices, harsh tones or a demeaning fashion;

- All staff are to act as partners and as a team, for the success of UWEB and the College, with a commitment to collaboration, cooperation, and communication.

Any staff member, who cannot interact in an appropriate manner in accordance with these expectations, may be subject to corrective action, up to and including termination.

I encourage you to seek assistance and mentoring from Dean Denton, the UWEB Administrator, or others in order to maintain a calm and professional work environment in line with the above-stated expectations. In conjunction with this, I am directing you participate in Stress Management and Anger Management sessions available through UW CareLink. Your participation with UW CareLink must be completed by August 31, 2002. You may contact UW CareLink, toll-free, at 866-598-3978. Finally, you must review and sign the attached UW CareLink Disclosure Form and Workplace Conduct Agreement.

I want to assist you in any way I can in continuing your successful career with UWEB. However, if you are unable to meet the expectations regarding your role as Director of Education and Outreach, you will be subject to termination.

*Enclosures:*     *Workplace Conduct Agreement*
                  *CareLink Disclosure Statement*

MJC:jam

# APS
Healthcare  **AUTHORIZATION OF RELEASE OF RECORDS OR INFORMATION**

I, _Fanaye Turner_____ (name of client) hereby give permission to APS Healthcare, or any
clinician performing services on behalf of APS Healthcare in connection with my treatment to

X ___ Disclose information to:                 AND/OR          X ___ Obtain information from:

Health Sciences Human Resources          _____
_____
*(Name of agency, physician, attorney,*            *(Name of agency, physician, attorney,*
*school counselor, therapist, etc.)*              *school counselor, therapist, etc.)*

1959 Pacific Hwy, Seattle, WA 98195        _____
*(Address, city, state, and zip code)* D-302 HSC       *(Address, city, state, and zip code)*

Phone: 206 ( ) 543-6330 _____          Phone: (   )_____

___ MY ENTIRE RECORD; OR
X ___ Only the following information: (Patient must initial each item to be released/obtained)

___ Substance Abuse Evaluation       ___ Diagnosis / Assessment
___ Treatment Recommendations       ___ Treatment Plan
___ Expected Length of Treatment       ___ Name of new Treatment Provider
___ Attendance Records Only        ___ Progress Report of my Treatment
X ___ Other (specify):  Compliance with referral to EAP including the timely scheduling
                                    and completion of required appointments
**FORM IN WHICH INFORMATION SHOULD BE RELEASED:** X ___ Verbal     ___ Photocopy
                                               X ___ Written     ___ Other

The purpose of this disclosure is:
___ to permit continuity of care.
___ to permit case management (including reimbursement determinations) and processing of benefit claims.
X ___ Other (specify): Employment _____

| I understand that my records may contain protected information regarding diagnosis and/or treatment for HIV |
|---|
| (AIDS virus) or other sexually transmitted diseases and drug/alcohol diagnosis and/or treatment. |
| Regarding HIV (AIDS virus) information, I give consent to release this information. (client's initials) _____ |
| Regarding drugs and/or alcohol, I give consent to release this information.     (client's initials) _____ |

The timeframe within which this release of information is applicable is from: _5/22/02_ to _8/22/02_ .
                                                                  (not to exceed 90 days)
**I may revoke this consent at any time except to the extent that action has been taken in reliance upon it.**
I understand I have the right to receive a copy of this authorization form. I also understand that upon my written
request, APS Healthcare must provide me a record of any subsequent disclosures made for legal, administrative, or
quality assurance purposes.


_____          _____
**Signature of patient**                 **Signature of parent, guardian, conservator, or**
                                         **authorized representative (when required)**

_____          _____
**Date**                                 **Witness**

NOTICE TO RECIPIENT OF INFORMATION
This information has been disclosed to you from records the confidentiality of which may be protected by federal and/or state
law. If the records are so protected, Federal Regulation (42 CFR Part 2) prohibits you from making any further disclosure of this
information unless disclosure is expressly permitted by the written consent of the person to whom it pertains, or as otherwise
permitted by 42 CFR Part 2. A general authorization for the release of medical or other information is NOT sufficient for this
purpose. The Federal rules restrict any use of the information to criminally investigate or prosecute any alcohol or drug abuse
patient.

CONFIDENTIAL - Subject to Restriction by Protective Order          UW_TUR10030

# Workplace Conduct Agreement

I understand that my continued employment is based upon the following agreement.

I, **Fanaye Turner**, agree:

- That I must meet all established standards of conduct in the workplace including performance and behavioral expectations cited in the attached letter from Melissa Cochran, Acting Human Resources Manager, Dean's Office-School of Medicine.

- That I will contact CareLink to participate in 3 educational sessions regarding Stress Management strategies and techniques. The sessions will be completed by August 31, 2002.

- That I will contact CareLink to participate in 3 educational sessions regarding Anger Management strategies and techniques. The sessions will be completed by August 31, 2002.

- That, by signing the attached CareLink disclosure statement, verification of my participation with CareLink will be sent to Health Sciences Human Resources to be held confidentially. This is to ensure that I am in compliance with this agreement.

- That my continued employment is contingent upon my meeting satisfactorily all of the above-referenced agreements and that my failure to do so could result in termination.

_____     Date_____
Fanaye Turner

# EXHIBIT 3
Declaration of Michael Madden

**Jeri Staley-Earnst**

| | |
|---|---|
| **From:** | Fanaye Turner [turner@uweb.engr.washington.edu] |
| **Sent:** | Thursday, July 11, 2002 10:20 AM |
| **To:** | Jeri Staley-Earnst |
| **Cc:** | Buddy Ratner |
| **Subject:** | New Education Program Coordinator |

Jeri,
Nina Hanlon will begin her work as the new Education Program Coordinator on Thursday, July 25.  I have informed Shirley and Verle for payroll purposes.

There are areas where Nina will be working closely and interfacing with the UWEB general administrative support staff and I would like to present her with a clear picture of what that will entail.  The areas are: 1. budget  2. maintaining the UWEB student data base and preparing certain tables for the annual report 3. preparing proposals for submission, routing for signatures and the actual submission  4. entering purchase orders and following through on all education and outreach purchases and  5. working with Jeanne on Education & Outreach travel.

1. I have spoken to Shirley and will be scheduling a meeting with her, Jenine and myself in order to give Nina a clear idea of what will be expected of her from the start.

2. I would also like to set up an initial meeting for Nina and myself regarding the data base up keep with the staff who will be involved with data base management and keeping the e-mail lists for students current.  I would appreciate your letting me know how to proceed on this section.

3. She will be responsible for Education and Outreach purchases including entering purchase orders and I would also like to have an initial meeting for Nina and myself with whoever you designate.  I would like Jeanne to attend this meeting to talk to us about travel.

If you would like to join us at the initial meetings, please let me know.  I will have Nina set up training sessions with the appropriate individuals after the initial meetings.

Fanaye

1

UW_TUR672596

CONFIDENTIAL – SUBJECT TO RESTRICTION BY PROTECTIVE ORDER

# EXHIBIT 4

Declaration of Michael Madden

 UNIVERSITY OF WASHINGTON ENGINEERED BIOMATERIALS

A NATIONAL
SCIENCE
FOUNDATION
ENGINEERING
RESEARCH
CENTER

TO:  Ms. Lorease Kendrick, UW School of Medicine Human Resources

FROM:  Dr. Andrew Brana, Director Industry Relations, UWEB

CC:  Dr. Buddy Ratner, UWEB Director

DATE:  April 7, 2003

RE:  Report of Harrassment

Dear Ms. Kendrick:

I wanted to leave this written statement with you as part of our meeting today regarding a personnel issue at work here at UWEB.

UWEB Personnel

Buddy D. Ratner, Ph.D.
Director
Phone: 206 685-1005
ratner@uweb.engr.washington.edu

Thomas A. Horbett, Ph.D.
Deputy Director and
Research Thrust 2 leader
Phone: 206 685-1392
horbett@cheme.washington.edu

Joan E. Sanders, Ph.D.
Research Thrust 3 leader
Phone: 206 685-8296
sanders@limbs.bioeng.washington.edu

Patrick S. Stayton, Ph.D.
Research Thrust 1 leader
Phone: 206 685-8148
stayton@bioeng.washington.edu

Margaret L. Kramer
Administrator
Phone: 206 616-8646
kramer@uweb.engr.washington.edu

Andrew Branca, Ph.D.
Director of Industry Relations
Phone: 206 616-3704
branca@uweb.engr.washington.edu

Fanaye Turner
Director of Education and Outreach
Phone: 206 616-6899
turner@uweb.engr.washington.edu

Clare Hannan
Communications Specialist
Phone: 206 616-9716
hannan@uweb.engr.washington.edu

On Thursday, April 27, 2003 I was working with Ms. Nina Hanlon on a scheduled task as part of a long-term group project.  I was attempting to help Nina with her part of the work, showing her how to use a government on-line system which I had mastered and she had not yet learned to use.  I had been working with Nina on this task for a couple of days.

I went into the Education and Outreach Office where Nina works, to provide an update to the project to her and Ms. Fanaye Turner, UWEB Director of Education and Outreach, Nina's supervisor.  Ms. Turner became agitated about Nina's involvement in this project.  This worked was scheduled since January 2003, with regular meetings several times a month, with clear, documented task lists for everyone involved.  We have had this project and the system for accomplishing it for my entire 5 plus years of working at UWEB.

Ms. Turner became increasingly abusive to Ms. Hanlon as the discussion continued, berating her incessantly in my presence.  Nina tried to inform Fanaye that Fanaye had actually told her that she (Nina) was in no way responsible for this, and that she should not have been doing this.

I was absolutely shocked to learn that Nina was in such a difficult situation.  The deadline for these complicated tasks was approaching within a week, and she was working very hard in just a couple of days and was well on her way to completing them.  I was also shocked to see Fanaye treat her in such an abusive fashion.  I left the room out of frustration and to control my own reactions to a

Ratner
EXHIBIT NO. D 2
10-30-06

deplorable situation.  When I went off to lunch, Nina was in Fanaye's office, in tears with the door closed.

More than an hour and a half later, I noticed that Nina was still in Fanaye's office and was obviously subjected to a continuation of the same treatment that I witnessed first-hand.  She was completely destroyed emotionally- I could see it in her face, which was a deep red and her eyes were filled with tears.

I feel it is my obligation to make my account very clear- in any reasonable person's perspective, this is a case of severe verbal harassment- by any definition and certainly as defined in by UW policy and according to all the HR training I have received here.

I am certain that UW Human Resources has a great deal of experience in handling such situations and I know that such behavior is never tolerated.  For these reasons I have provided this statement to assist HR in performing their necessary obligation its employees, whether they are faculty, professional staff, or as is the case with Nina Hanlon, a classified staff member represented by an official bargaining unit.

Sincerely,

Andy Branca

# EXHIBIT 5

Declaration of Michael Madden

Nina  3/27/03

Monday –    F    "I'll see you tomorrow"
3/24              N    "oh its going to be a long wk"
                    F    "why are you making a big deal
                          of this. Its just tables"

                    N    "I'm not a making a big deal,
                          just saying I have annual rpt.
                          (everythings) fine"

              F snapped   "I'll see you tomorrow"

Throughout the week N asked her what do tables mean?
"I don't do tables"
And finally helped expl.

3/27

N. told F – "I had this great conv. w/ A. + we can
                  look at the data on the web."

F                     "I don't do tables just print it out"

A + N  –  had questions / A + N went to F
  A started to ask ?? N did great job on table #7
  F answered
  F told N "you have to pass that info by me"
  N  "you told me you didn't do tables"
  F  "No, I want to see the data"
  N  "Every time I come to ask about the annual rpt you
        say you don't do tables
  F  " you have an attitude
  N  " aren't I allowed to expressed myself

N "problem communicating > confusion.

F " No confusion. I'm telling you I need to first see
data & you need to do tables.

N walked around >

< came back > was going to temp svces.                    hr disc

F wanted to talk "this will not happened again.
I have been so patient c/ you. I have done
a lot for you & you have an attitude"

N started crying "I'm frustrated"

F said supports N & door's always open

N we can only talk thru email

F ok to talk thru email
recurred — need to come to me 1st.

F) Supportive of Andy + Buddy

Conv. wound down when she (N) started crying

F stood over her.

(D 302
Health Sci      8:30 am

# EXHIBIT 6
Declaration of Michael Madden

# UCIRO
## INITIAL INTAKE SHEET

Initial Contact Date/Time: __4/3   11:06 Am__          Type of contact: (phone)/walk-in

Inquiry ID #: __5693__

**Inquirer:**

Full Name: __FANAYE TURNER__

Complete Home Address: __5844 NE 75th STREET, #A-314 Seattle, WA 98115__

Home Phone #: __(206) 525-1359__          Position Title/Student Status/Other: ____

Unit/Dept: __HEALTH   BIOENGINEERING__ Unit/Dept inquired about: ____
__SCIENCES      - UWEB -__

Status: Temporary/Hourly   Student   Classified   Professional   Faculty   Patient   Non-U   Unit Head   Other

Work Phone #: __(206) - 6-6899__ Box #: ____          E-mail Address: ____

Immediate Supervisor: ____          Union Name: ____

**Who else have you contacted about this? (Names, Dates, Issues Raised, Response/Outcome, etc.)**

Dept. Personnel: ____

HR Rep/Personnel Dept: __LOREASE KENDRICK__

Ombudsman: __LOIS PRICE-SPRATLEN & SUSAN NEFF__

Union: ____

EEO/AA: ____
(Do not inquire; fill in if volunteered)

Other: ____

Who referred you to our office? __OMBUDSMAN__

**Factual Information Provided Regarding Concern:**

__See emails attached__

**What led you to contact our office?**

**What were you anticipating our office might do for you?**

5/15/96

DEP. EX. 208A   CONFIDENTIAL - Subject to Restriction by Protective Order          UW_TUR10012

Date: Fri, 4 Apr 2003 11:14:28 -0800 (PST)
From: UCIRO <uciro@u.washington.edu>
To: Kevin Rainge <krainge@u.washington.edu>
Subject: Requesting an Institutional Review (fwd)


---------- Forwarded message ----------
Date: Fri, 04 Apr 2003 10:06:16 -0800
From: Yongmin Kim <ykim@u.washington.edu>
To: krainge@u.washington.edu
Cc: uciro@u.washington.edu, barbara mahoney <bmahoney@u.washington.edu>,
     denton@engr.washington.edu, mjco@u.washington.edu, ykim@u.washington.edu
Subject: Requesting an Institutional Review

Dear Mr. Rainge,

I am the Chair of the Department of Bioengineering.  Our academic unit
belongs to both the School of Medicine and College of Engineering.

On 4/2/03, I received a complaint from Ms. Fanaye Turner, the Director of
Education in the University of Washington Engineered Biomaterials (UWEB),
which administratively belongs to the Department of Bioengineering.  She
charges that Ms. Rita Jensen, the Bioengineering Administrator, intimidated
her and caused her harm through Ms. Jensen's acts of discrimination and
retaliation.  I am also aware of a previous complaint from Mr. Turner
against Ms. Jeri Staley,  the UWEB Administrator.

I would like to ask the UCIRO to initiate an institutional review to
investigate this matter thoroughly and objectively and report your findings
to me and appropriate people.  If you have any questions, please let me
know.  Best regards!

Yongmin Kim
Professor and Chair
Bioengineering

DEP. EX. 208A    CONFIDENTIAL - Subject to Restriction by Protective Order    UW_TUR10013

Date: Fri, 18 Apr 2003 11:52:01 -0700 (Pacific Daylight Time)
From: Jill Beaver Lee <jbeaver@u.washington.edu>
To: Yongmin Kim <ykim@u.washington.edu>
Cc: Kevin Rainge <krainge@u.washington.edu>,
      Barbara A Mahoney <bmahoney@u.washington.edu>,
      Denice Dee Denton <denton@engr.washington.edu>,
      MELISSA J. COCHRAN <mjco@u.washington.edu>
Subject: responding to your request for an institutional review

Dr. Kim - I am writing to let you know that Fanaye Turner contacted UCIRO
on April 3 to discuss options for resolving her concerns.  She is
proceeding with UCIRO's internal complaint process.

We received your request for an institutional review on April 4. Although
UCIRO initially sent notification of an institutional investigation,
UCIRO's practice is to allow the individual with the allegations to
initiate the process if they wish to do so, particularly if they contacted
this office first.  In such an instance, we hold open a request for an
institutional review to ensure that the scope of the requested
institutional investigation will be encompassed within what the
complainant alleges.  From what I understand about Ms. Turner's
allegations, they would encompass the subject of your request.

You will be receiving shortly notification of Ms. Turner's request for an
internal investigation.  Please feel free to contact me if you have
questions or concerns.  You may also contact Kevin Rainge, UCIRO's
Manager.

Jill Lee

^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^ ^
Jill Beaver Lee, Investigation and Resolution Specialist
University Complaint Investigation and Resolution Office (UCIRO)
University of Washington
4311 11th Avenue, Suite 630
Seattle, WA  98105-4608
On-Campus Mailbox 354996

Phone:  (206) 616-5713          TDD    (206) 616-4797
FAX:    (206) 616-7110          E-mail: jbeaver@u.washington.edu

DEP. EX. 208A   CONFIDENTIAL - Subject to Restriction by Protective Order          UW_TUR10014

# EXHIBIT 7

Declaration of Michael Madden

UNIVERSITY COMPLAINT INVESTIGATION & RESOLUTION OFFICE
UCIRO


UNIVERSITY OF
WASHINGTON

May 28, 2003

### PERSONAL & CONFIDENTIAL

Fanaye Turner
5844 N.E. 75th Street, #A-314
Seattle, WA 98155

RE:    Your complaint

Dear Ms. Turner:

This correspondence acknowledges your phone conversation of May 16, 2003 with Jill B. Lee in which you confirmed the complaint allegations. I have been assigned to this matter and will open your complaint effective May 28, 2003 and investigate your allegations as stated.

If you have any other questions or concerns, please do not hesitate to contact me (206) 616-7109.

Very truly yours,

Mike Keller
Investigation and Resolution Specialist

4311 11th Avenue NE, Suite 630    Seattle, Washington 98105-4608
206.616.2028    FAX 206.616.7110    TDD 206.616.4797
Campus mail Box 354996

DEP. EX. 208A    CONFIDENTIAL - Subject to Restriction by Protective Order    UW_TUR10019

# EXHIBIT 8
Declaration of Michael Madden

Dep. Ex. 00154

| | |
|---|---|
| **From:** | Rita Jensen [rjensen@u.washington.edu] |
| **Sent:** | Thursday, April 03, 2003 2:54 PM |
| **To:** | Lorease Kendrick |
| **Subject:** | temp for Fanaye |

Lorease

Buddy will be the one to talk with Fanaye about her request for a temp. He told me today that he has made a decision that Fanaye will not supervise the temp or the program coordinator and that person will be under Jeri. He is adamant about this.

Rita

*******************************************
Marguerita B. Jensen
Administrator
Dept. of Bioengineering
tel. 206-685-2004
fax 206-685-3300

[]

1

UW_TUR20407
Confidential - Subject to Restriction by Protective Order

# EXHIBIT 9
Declaration of Michael Madden



Interdepartmental Correspondence
## REPORT OF INVESTIGATION

DATE:             December 22, 2003

FILE:             Fanaye Turner
                  UCIRO File No. 1581

DEPARTMENT:       UWEB
                  Department of Bioengineering

INVESTIGATOR:     Michael Keller, Investigation and Resolution Specialist   MK
                  University Complaint Investigation and Resolution Office

## I.    INVESTIGATION BACKGROUND

Fanaye Turner, Director of Education and Outreach, UWEB (University of Washington
Engineered Biomaterials), contacted the University Complaint Investigation and Resolution
Office ("UCIRO") on April 3, 2003, to request an investigation into allegations that she was
being subjected to illegal discrimination and retaliation. (Ex. 1). Turner asserts these actions
have been directed at her by Marguerita Jenson, Administrator, Bioengineering, and Jeri Staley-
Earnst, Administrative Director, Bioengineering/UWEBB. On April 4, 2003, Yongmin Kim,
Professor and Chair of Bioengineering, e-mailed UCIRO requesting an institutional investigation
into allegations brought to him by Turner regarding the same two individuals. (Ex. 2). Pursuant
to UCIRO policy and practice, Turner's complaint supplanted the institutional request for the same
investigation. (Ex. 3). Following a series of communications with UCIRO Investigation and
Resolution Specialist Jill Beaver Lee, the substance of Turner's complaint was confirmed with her on
May 16, 2003. (Ex. 4). A formal investigation into her allegations was subsequently opened on May
28, 2003. (Ex. 5).

Turner alleges that Jensen and Jeri Staley-Earnst discriminated against her because of her race
and national origin and also retaliated against her for engaging in protected activity in opposition
to such conduct. More specifically Turner alleges that she was discriminated and retaliated
against as a result of, and through a pattern of, hostility by Jensen and Staley-Earnst. This
pattern allegedly included: elevating any concern expressed about her to the level of a complaint
and then investigating it as such without any attempts to resolve the matter directly;
reprimanding her for alleged behavior that others engage in with impunity; ignoring or
downplaying her complaints; isolating her from staff; encouraging staff to unite against her;
excluding her from team-building efforts; and falsely accusing her of misbehavior. Turner
further alleges a series of specific actions, as discussed in more detail below, as examples of and
evidence of such discriminatory and retaliatory treatment.

1

UCIRO has investigated Turner's complaint under the University of Washington's ("University") procedures set forth in *Administrative Policy Statement*, § D 46.3. (Ex. 6). During the course of this investigation, this investigator interviewed the following individuals either in person or by telephone:

- Shirley Alcantara, Budget/Fiscal Unit Supervisor, UWEB

- Janet Blanford, K-12 Education/Outreach Coordinator, UWEB

- Andrew Branca, Director, Industry Relations, UWEB

- Denice Denton,  Dean, College of Engineering, Professor, Electrical Engineering

- Deborah Flores, HR Administrator, College of Engineering, Office of the Dean

- Nina Hanlon, Program Coordinator, Medicine

- Shari Ireton, Communication Specialist, UWEB

- Marguerita Jensen, Administrator, Bioengineering

- Buddy Ratner, Director, UWEB, and Professor, Bioengineering and Chemical Engineering

- Amy Leslie, Lead Teacher, UWEB

- Tekie Mehary, K-16 Science Education/Outreach Coordinator, UWEB

- Esmaeel Naeemi, Research Scientist, Bioengineering

- Jeri Staley-Earnst, Administrative Director, Bioengineering/UWEB

- Patrick Stayton, Professor, Bioengineering

- Caren Tidwell, Scientific Research Coordinator, UWEB

- Fanaye Turner, Director of Education and Outreach, UWEB

In addition to these individuals, the investigator also had more limited conversations with the following individuals.

- Melissa Cochran, Director of Human Resources, School of Medicine, VPMA/Office of the Dean

- Lorease Kendrick, Senior Human Resources Consultant, Health Sciences Human Resources

2

CONFIDENTIAL - Subject to Restriction by Protective Order

UW_TUR30103

- Yongmin Kim, Professor and Chair, Bioengineering

- Ramon Soliz, Human Resources Manager, Health Sciences Human Resources

The investigator directed the individuals interviewed to keep all aspects of the investigation process confidential unless someone had a clear business need to know. The investigator also indicated to all individuals interviewed that it is a violation of University policy to retaliate against any individual for filing a complaint, or participating in the investigative process.

The investigator's interviews with individuals each conveyed an account of, and a perspective on, one or more of the matters recounted below. On various points, some of these accounts were incomplete, and on various points some of them conflicted. The following analysis represents the investigator's reconciliation of these competing versions and, where necessary, the investigator's judgment regarding credibility in view of all facts and circumstances.

In addition to interviewing these individuals, the investigator reviewed all documentation provided. All factual information obtained in the investigation was reviewed and considered in its entirety. Some of the factual information has been summarized or aggregated for the purposes of this report in keeping with privacy, confidentiality, and applicable laws.


## II.     RELEVANT UNIVERSITY POLICIES AND/OR PROCEDURES

The University of Washington has written policies and procedures that prohibit discrimination on the basis of race and sex. Specifically, the University of Washington *Handbook* includes a prohibition against discrimination on the basis of race and national origin. *See Handbook*, Vol. IV, Part I, Chapter 2, section 1. Also, the University of Washington *Administrative Policy Statements* § D 46.3 contains equal opportunity statements prohibiting discrimination on the basis of race and sex. (Ex. 6). That statement also contains University policy that strictly prohibits any penalty or retaliation against any individual for participating in the complaint process.


## III.    FRAMEWORK OF INVESTIGATION

Turner's allegations against Jensen and Staley Earnst assert a number of different acts attributed to discriminatory intent based on her race or national origin and/or retaliatory intent based on her opposition to alleged discrimination. During the course of the investigation, each of the challenged acts was investigated for any evidence of such illegal intent. In looking for evidence of illegal motivation, this investigator was guided by the structure used by federal and state courts in analyzing claims of discrimination and retaliation. That structure provides that where, as is true here, there is no evidence that directly evidences illegal motivation (i.e. statements directly reflecting discriminatory or retaliatory animus), an employee may establish his or her claims through indirect evidence that establishes a prima facie case of discrimination or retaliation and that also discredits the asserted justification for the challenged acts. Absent such

3

evidence, a claim fails as a matter of law. In the event the employee satisfies both of these prongs, such evidence may be deemed by a fact-finder to infer that the acts were motivated by discriminatory or retaliatory intent. In considering each of these issues, the investigator has used the preponderance of the evidence standard.

This report will now address each of the alleged discriminatory and/or retaliatory acts Turner attributes to Jensen and Staley-Earnst.

## IV.    FACTUAL FINDINGS AND ANALYSIS

Turner makes both general and specific allegations in her complaint, and presented them in a manner in which many were intertwined. This report attempts to sort out the specific allegations and discuss them in the context of the general allegations.

a. Pattern of hostility by Jensen and Staley-Earnst, and, with their instigation, from others.

Turner alleges that Jensen and Staley-Earnst have exhibited a pattern of hostility against Turner and instigated others to do the same. This allegedly includes isolating Turner from staff and encouraging staff to unite against her. The preponderance of the evidence does not support the conclusion that Jensen or Staley-Earnst have directed such a pattern of hostility towards Turner, nor does it support any conclusion that they instigated such actions by others.

 The investigator instead credits the statements of co-workers who assert that it is Turner, rather than Staley-Earnst or Jensen, who exhibits open hostility towards others. For example, Caren Tidwell, UWEB Scientific Research Coordinator, credibly stated that Staley-Earnst and Jensen have been exceptionally tolerant and professional in their interactions with Turner despite Turner being openly hostile. Examples she gives of this hostile treatment include Turner storming into the office and glaring at Staley-Earnst through the glass window to her office, excluding Staley-Earnst from her conversations and greetings to others, and putting statements of policy disagreements with Staley-Earnst in accusatory and confrontational terms. Andrew Branca, Director of UWEB Industry Relations, credibly asserts that he has also seen Turner treat Staley-Earnst in a demanding and disrespectful manner and also agrees that the response of Staley-Earnst has been professional and to attempt to avoid engaging with Turner over her inappropriate behavior. Further, the investigator found the statements of Staley-Earnst and Jensen that Turner has interacted with them inappropriately to be credible. Jensen, for example, credibly reports that when she interacted with Turner over a complaint about Turner from Kahreen Tebeau, which is dealt with in more detail below, Turner responded by glaring at her in anger to the point Jensen felt intimidated.

In addition to this evidence, interviews with Turner's subordinates revealed no support for her speculation that staff have been turned against her by Jensen or Staley-Earnst. Instead, the preponderance of the evidence shows that those staff who are cautious/leary of Turner have developed that approach based on their own observations of what they view as demanding and

4

bullying actions by Turner.[1]  The investigator further notes that there is no evidence linking these opinions to any discriminatory or retaliatory animus.

b. Elevating concerns to complaint level without attempting to directly resolve the matter.

Turner also asserts that Jensen and Staley-Earnst elevate any concerns about her to the level of a complaint and investigate it as such without attempting to resolve the matter directly.  The preponderance of the evidence does not support this allegation by Turner.

There is no evidence that Jensen or Staley-Earnst have ever inappropriately elevated concerns about Turner beyond their proper level.  Instead, the record reflects that Jensen and Staley-Earnst responded appropriately to the matters and complaints that were brought to their attention and that the human resources investigations that have occurred were of allegations that were sufficiently serious to warrant such investigation.  There is also no support for the conclusion that the individuals involved in the interactions with Turner should have been required to directly confront Turner with their complaints about inappropriate treatment prior to the matter being investigated by human resources.  University policy, in accordance with state and federal discrimination laws, specifically provides that an individual need not take this specific step in order to have their concerns investigated.

The first investigation about which Turner complains followed a complaint by her program coordinator, Kahreen Tebeau, that Turner had been unbearable and abusive towards her and had assaulted her by grabbing the back of her clothes to try to prevent Tebeau from leaving an argument in which they were engaged.  Tebeau made this complaint to Jensen on April 18, 2002, who, in accordance with University policies and guidelines, passed the information on to human resources who then investigated the matter in accordance with standard practices.  There was nothing inappropriate in her actions.  Instead, ignoring the complaint would have been inappropriate.  Staley-Earnst, who had just started on the job a few days prior, similarly engaged in no inappropriate actions, instead simply facilitating the ability of human resources to interview staff members regarding the allegations.  Further, as noted above, there was nothing inappropriate in not requiring Tebeau to meet directly with Turner to try to iron the matter out short of involving human resources.  A person alleging another is acting in an abusive and hostile matter is not required, under University policy, to confront that person face to face about the matter before such an allegation will be investigated.

The other investigation about which Turner complains regards the investigation into her treatment of Nina Hanlon, the individual who replaced Tebeau.  This investigation arose following an April 27, 2003, written complaint by Director of Industry Relations Andrew Branca to human resources stating that in a meeting he had with Turner and Hanlan "Turner became increasingly abusive to Ms. Hanlon as the discussion continued, berating her incessantly in my presence.... I left the room out of frustration and to control my own reactions to a deplorable situation.  When I went off to lunch, Nina was in Fanaye's office, in tears with the door closed."

---

[1] The view that Turner treats others in a bullying and abusive manner was not shared by all of those with whom Turner interacts, several of whom instead reported a respectful working relationship with Turner.  It is the investigator's conclusion, based on the statements with all of the witnesses identified above, that Turner is entirely capable of interacting on a professional relationship with colleagues and peers if she so chooses.

5

CONFIDENTIAL - Subject to Restriction by Protective Order                    UW_TUR30106

(Ex. 7). Branca further wrote that when he returned he again saw Hanlon in Turner's office crying. "She was completely destroyed emotionally – I could see it in her face, which was a deep red and her eyes were filled with tears." (Id.).[2]

Upon returning from lunch and observing Hanlon still in tears, Blanca further reports that he immediately went to Staley-Earnst who in turn contacted Debbie Flores for advice on what to do. Per the advice of Flores, the meeting between Hanlon and Turner was then interrupted by telling Hanlon she had an emergency phone call to get her out of the situation. After this, Hanlon was given the opportunity to talk with human resources about what had happened during which time she reported the desire not to have to return to working with Turner.

The evidence accordingly reveals no evidence of inappropriate, discriminatory or retaliatory actions by Staley-Earnst or Jensen as it relates to this investigation. It was instead the natural result of a complaint from a co-worker who asserted he had personally observed Turner treating an employee in an abusive and berating manner to the point that the employee was reduced to tears. Further, as noted above, University policy does not require an individual potentially subjected to abusive treatment to directly confront that individual prior to a complaint regarding such actions being investigated.

c. Reprimanding Turner for actions others engage in with impunity.

Turner asserts that she has also been discriminated and retaliated against by Jensen and Staley-Earnst reprimanding her for actions allegedly engaged in by others with impunity. The preponderance of the evidence does not support this claim. First, neither Staley-Earnst or Jensen have themselves issued any reprimand regarding Turner. Indeed, Staley-Earnst reports to the same person as does Turner and does not even have the capacity to take such an action. (Ex. 8). Second, the only Letter of Reprimand Turner has been given, dated May, 2002, was issued by Director of Human Resources Melissa Cochran. In that document, Cochran summarized the basis for the Letter of Reprimand she (not Jensen or Staley Earnst) was issuing as follows:

> In the afternoon of Thursday, April 18, 2002, you and your Program Coordinator, Kahreen Tebeau, were engaged in a conversation regarding some emails sent by Ms. Tebeau in error. Evidently, tempers flared during this discussion and both of you began yelling extremely loudly. According to three witnesses who came out in to the hallway because they heard yelling, Ms. Tebeau stepped out from the doorway of her office, at the opposite end of the hallway, with her hands up and said, "Everyone, I just want you to know that Fanaye just grabbed me and shook me because I told her she had a bad attitude."

> In your discussion on Monday, April 22, with Debbie Flores, Human Resource Administrator, COE Dean's Office, you stated that you did not grab Ms. Tebeau but placed your hand on her arm and told her to calm down because she was getting too excited. You did say that the two of you were yelling at each other.

---

[2] Branca's letter asserts his mistaken belief that Hanlon remained in Turner's office during the entire time he was at lunch. This is not accurate. Hanlon, as discovered by human resources during their investigation, had also left the office for lunch but had returned to Turner's office by the point Branca returned.

CONFIDENTIAL - Subject to Restriction by Protective Order                UW_TUR30107

Ms. Flores found in conducting interview with other UWEB staff, that in the last 3 months, many of them had experienced unpleasant exchanges with you during which you seemed stressed. During those times, they indicated that you tended to speak sharply, condescendingly, and in demanding tones to them.

During the meeting Ms. Flores had with you, you acknowledged that for several reasons, you have been stressed lately but denied having any problems with anger.

As a manager in UWEB, you represent the leadership in the Center, in the Department of Bioengineering and in the College of Engineering. The interaction on April 18, with Ms. Tebeau, which included yelling and touching her during a heated argument, is not representative of the type of behavior expected at the Center, and it cannot happen again. From this point forward and for the duration of your employment, I expect your exchanges with staff in the course of your daily work to be professional and respectful in tone....

(Ex. 9).

Turner has produced no evidence that the above recitation of facts does not represent Cochran's good faith understanding of the events at issue, nor has she produced any evidence that those involved in the decision to issue the Letter of Reprimand have countenanced similar behavior in similar circumstances by others. Accordingly, her evidence on this allegation fails as a matter of law.

d. Ignoring or downplaying Turner's complaints.

Turner also asserts discriminatory and retaliatory behavior in the form of Jensen and Staley-Earnst allegedly downplaying or ignoring Turner's complaints. In support of this, Turner provided the investigator with various examples of e-mail correspondence which she asserts establish this fact, including her own complaints about individuals who have brought complaints against her. The preponderance of the evidence does not support Turner's allegations on this issue.

This conclusion is based on the lack of any evidence from Turner that the level of response to any complaints she has brought forth has been inappropriate in a manner that raises a suggestion of retaliatory or discriminatory intent. For example, one of the complaints Turner points to involves her complaint to Staley-Earnst on June 21, 2003, that Jennifer Gay, an employee who has since left UWEB, was negative and disrespectful to her. (Ex. 10). Staley-Earnst, following interviews with Turner and Gay about the matter, agreed to largely remove Gay from projects supporting education and outreach as Turner requested despite her conclusion that the evidence on whether or not Gay had failed to treat Turner with appropriate respect was in substantial conflict. (Id.). Turner, in challenging this response, does not present any evidence from others supporting the conclusion that she was more credible than Gay with regard to the issue of whether Gay was treating her with respect, nor does she present any evidence that Staley-Earnst was acting on anything other than good faith conclusions in determining that the evidence was

CONFIDENTIAL - Subject to Restriction by Protective Order

UW_TUR30108

not sufficient for her to credit Turner's version of events over that of Gay.  As such, there is no evidence supporting Turner's speculation that the response to her complaint was retaliatory or discriminatory.

Another example of this involves an e-mail complaining about a matter that Turner states was simply ignored, even after she filed a complaint over the matter with the Ombudsman's office. This "complaint," which is laid out in e-mail correspondence between Turner, Ratner, and Staley-Earnst, was brought by Turner after an e-mail went out announcing that there was going to be a lunch time farewell get together with Italian sodas for a departing staff member. Turner e-mailed Staley-Earnst that scheduling this for one of the people she supervises without consulting her was disrespectful and was not acceptable. (Ex. 11).  Staley-Earnst e-mailed back that she did not consider scheduling such an informal event inappropriate and that if she knew, as Turner asserted in her e-mail, that Turner had conflicting plans on that date she would not have done it.  Staley Earnst also noted that the timing had specifically been set for the lunch hour so as not to interfere with the employee's work responsibilities. (Id.).  Turner responded that it would have been common courtesy to ask her if she was planning anything, and that she felt a need to meet with Ratner and Staley-Earnst regarding this and other issues as soon as possible. (Id.). Subsequently, unsatisfied with a lack of response, Turner asserts she filed a complaint about this matter with the Ombudsman's office.

Turner's suggestion that the failure to investigate the matter shows disparate treatment is entirely unconvincing.  There is simply no evidence from which a reasonable factfinder could conclude that any illegal intent accompanied the e-mail setting up a time to bid farewell to a departing employee, or that there was any illegal intent accompanying the decision not to elevate Turner's criticism of Staley-Earnst into a complaint.  While Turner may choose to read mal intent into the actions of others that appear innocent and well meaning on their face, her superiors and co-workers are under no obligation to join her in that endeavor when evidence supporting such a jump in logic is entirely lacking.

e.  Falsely accusing Turner of misbehavior.

Turner also asserts that Jensen and Staley-Earnst subject her to discrimination and retaliation by falsely accusing her of misbehavior.  In support of this, Turner points to one incident where she asserts Jensen falsely informed Human Resources that Turner had called the predecessor to Staley-Earnst a "bitch", where Turner asserts it was actually the other employee who had called Turner by that term.  Turner further asserts that this action by Jensen was based on retaliatory and/or discriminatory intent.

The preponderance of the evidence does not support Turner's claims that any misstatement by Jensen to human resources was purposeful, or that it was motivated by retaliatory or discriminatory intent.  Instead, Jensen credibly asserts that in speaking with human resources about the Kahreen Tebeau matter she passed on to them what she understood UWEB Director Buddy Ratner to have told her about a prior exchange between Turner and the predecessor to Staley-Earnst.  She further credibly asserts that information she passed on had nothing to do with Turner's race or national origin or in retaliation for Turner having engaged in any type of protected conduct.

8

UW_TUR30109

Further, the investigator notes that any mistaken statements by Jensen on this matter did not end up impacting the human resource investigation because Deborah Flores, the human resources administrator investigating the matter, specifically determined she was not going to rely on any alleged incidents that significantly predated the interaction between Turner and Tebeau because of the difficulty of attempting to determine the veracity of things that had not been contemporaneously treated as a human resources matter. She accordingly instead limited her findings to the evidence regarding the interactions between Tebeau and Turner and other recent matters that were shared with her during the witness interviews. This did not include any allegations concerning the interactions between Turner and the predecessor to Staley-Earnst.

The lack of any causal link between Jensen's statement to human resources about her understanding of the interactions between Turner and the predecessor to Staley-Earnst is yet another reason Turner's claim on this issue fails. An action by an individual does not rise to the level of actionable discrimination or retaliation where it has no adverse impact on the employment relationship at issue. Here, there was no such adverse impact. Flores did not consider the statements provided to her about this matter in reaching a good faith conclusion that Turner's interactions with Tebeau were inappropriate.

f. Human Resources investigation into and response to Tebeau matter.

Turner also alleges that the manner in which human resources conducted the investigation into the complaint by Tebeau and the follow up to that investigation evidence discriminatory and retaliatory actions by Jensen and Staley-Earnst. This conduct allegedly includes: 1) scheduling a meeting to go over the Letter of Reprimand issued as a result of the human resources investigation that was attended by Dean Denice Denton, Cochran and Jensen; 2) Cochran telling Turner that she needed to sign a workplace conduct agreement in order to continue her employment; 3) Dean Denton holding a meeting with UWEB staff set forth a training plan to address workplaces stress and conflict to which Turner was allegedly not invited; and, 4) human resources not responding to a letter from Turner's attorney taking issue with the investigation and response.

The preponderance of the evidence does not support the conclusion that these actions are attributable to Jensen or Staley-Earnst, or that they are attributable to discriminatory or retaliatory intent. Instead, each of the challenged actions were taken on the basis of decisions made by one or more of Yongmin Kim, Buddy Ratner and Denice Denton based on information primarily provided to them by human resources. Further, there is no evidence that in proceeding in the matter in which they did that these individuals engaged in any conduct contrary to University policy or contrary to the way in which they would deal with a similar situation involving others. The evidence instead shows that they were proceeding on a reasonable good-faith belief that the results of the human resources investigation warranted such an approach. The investigator also notes that contrary to Turner's assertions, she was scheduled to be included in a workplace conflict training involving others at her level. Turner took medical leave at that time, however, and as a result did not attend the meeting.

9

CONFIDENTIAL - Subject to Restriction by Protective Order    UW_TUR30110

g. Relocation of reporting relationship of program coordinator.

Turner also asserts that a decision made earlier this year to remove Nina Hanlon, UWEB outreach and education Program Coordinator, from her supervision constituted retaliation and or discrimination by Staley-Earnst and or Jensen. She asserts the same about a subsequent decision to have Hanlon's replacement report to Staley-Earnst. The evidence, however, does not support this assertion.

Instead, the evidence shows that Hanlon was initially removed from the supervision of Turner based on the recommendation of human resources personnel following Branca's written complaint and Hanlon's statements (after the intervention to remove her from the office) that she did not want to continue to report to Turner and that Turner's actions left her intimidated and uncomfortable. Subsequently, it was Buddy Ratner, not Staley-Earnst or Jensen, who made the decision that Hanlon would not return to Turner's supervision. The evidence further shows that Ratner's decision to make this change was not itself infected with any discriminatory or retaliatory intent, but that it was instead based on his good faith belief, following a pattern of interactions he had seen between Turner and others in the workplace, that removing Hanlon, and her eventual replacement, from Turner's supervision was appropriate. Ratner credibly asserts that it is his belief that while Turner is a person with amazing strength in many areas, she also has a history of getting into polarized relationships with others in the office in which she eventually "shatters" them. Ratner further credibly reports that this conclusion is one he has wanted to avoid, and likely put off facing, given Turner's abilities and the many ways in which she is more than capable of contributing to the success of UWEB. At this point, however, following Turner's continued inappropriate actions with staff members holding this position, he is not prepared to return the reporting relationship to Turner.

Turner's assertions that Hanlon's removal from her supervision, and the moving of the reporting relationship of that position to Staley-Earnst, is attributable to discriminatory or retaliatory intent of Staley-Earnst or Jensen is accordingly without any support in the record. Instead, this resulted from the actions and decisions of others based on their good faith belief that Turner's actions warranted such a response. Further, the evidence supports the conclusion that the individuals who were involved in this decision did so based not on any retaliatory or discriminatory intent they harbored, but instead on the basis of a building record of what they reasonably viewed as credible evidence that Turner too often treats subordinates in the workplace in an abusive and bullying manner. Hanlon, for example, credibly asserts that following Branca's departure from the meeting described above, Turner and she had a very tense argument during which Turner told her in an insulting tone and with a glaring look "you have an attitude problem." She further credibly reports that during the meeting with her Turner was so angry that she was visibly shaking as she castigated her. Hanlon further reports that Turner's anger and emotion were to the point where Hanlon found herself just sitting there nodding her head and stuttering out responses, and that Turner's actions left her feeling extremely uncomfortable and intimidated.

10

CONFIDENTIAL - Subject to Restriction by Protective Order          UW_TUR30111

h.  Transfer of some budget responsibilities to Staley-Earnst.

Turner also asserts that the actions of UWEB Director Buddy Ratner to transfer some of the aspects of her budget under Staley-Earnst constitutes an additional act of discrimination and/or retaliation by Staley-Earnst and/or Jensen.  The evidence reveals no support for this conclusion.

First, the decision to transfer the aspects of the budget at issue was made by Ratner, not Staley-Earnst or Jensen.  Second, the decision to make the transfer followed the discovery that UWEB Education and Outreach had not been following University procedures on the filing of Budget Activity Reports and Budget Status Reports (BARs and BSRs).  Third, the evidence reflects that the issue of control over the outreach and education budget is one where Ratner had initially put such authority under the first administrator, but following a battle between Turner and that individual had acceded to demands from Turner that she be given authority over her own budget in contrast to other budgetary matters within UWEB.  Ratner credibly asserts that he had qualms about doing this, since it is ultimately his responsibility to make sure there is proper accountability.  He further credibly asserts that his decision to return some aspects of the budget oversight to where he initially wanted them occurred after it came to his attention in early 2003 that Budget Activity Reports and Budget Status Reports were not being properly prepared or reconciled with regard to Turner's budget.  At that point he determined that he needed to conform the oversight of this budget to that of the rest of UWEB in order to ensure proper accountability.  Ratner's assertions that these reports were out of order, and that the transfer of control of oversight simply returned those aspects of the education and outreach budget to the same status as other aspects of the UWEB budget, was credibly confirmed by Shirley Alcantara, Budget/Fiscal Unit Supervisor, UWEB.  Accordingly, the evidence does not support any conclusion that this event was premised on discriminatory or retaliatory intent.

i.  E-mails allegedly showing discrimination or retaliation

In addition to the matters above, Turner has also provided the investigator with assorted e-mails s that she asserts evidence discrimination and/or retaliation.  This includes several e-mails from April 2003 which concern interviewing a temporary employee and the inability to locate certain records, (Ex. 12), and an e-mail exchange regarding storage space difficulties.  (Ex. 13).  Neither the e-mails, nor the surrounding circumstances, evidence any inappropriate actions by Staley-Earnst or Jensen, or anyone for that matter, regarding the topics contained therein.

j.  Additional alleged acts of retaliation

On October 30, 2003, Turner e-mailed UCIRO a list of five acts she asserts are based on retaliation and/or part of a hostile environment.  Some of these matters relate to new allegations, whereas others, such as an assertions that she was retaliated against by having her budget authority taken away and by having a subordinate report to Staley-Earnst, relate to matters that formed part of the original basis of Hanlon's complaint and initial conversations with the investigator.  (Ex. 14).  It is the investigator's understanding that Turner does not wish this investigator to review allegations first raised by her letter dated October 30, 2003.  Accordingly, no findings are presented regarding those matters except for those raised in her original complaint and communications with this investigator.

CONFIDENTIAL - Subject to Restriction by Protective Order    UW_TUR30112

## V.    CONCLUSION

UCIRO has investigated each of the allegations of discrimination and retaliation as presented by Turner, other than new allegations first presented on October 30, 2003. The investigator found no evidence supporting any of Turner's claims. Instead, there is no evidence that Jensen or Staley-Earnst, or the others involved in the matters about which Turner has complained, have acted on the basis of discriminatory or retaliatory intent. Indeed, the investigator found absolutely no credible evidence that appears sufficient for a fact-finder to reasonably conclude that either Jensen or Staley-Earnst harbor any such intent. Instead, the preponderance of the evidence shows they have simply been doing their best to deal with difficult situations created by Turner.

CONFIDENTIAL - Subject to Restriction by Protective Order            UW_TUR30113