UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FANAYE TURNER,

    Plaintiff,

  vs.

UNIVERSITY OF WASHINGTON and
BUDDY RATNER,

    Defendants.

No. CV05-1575RSL

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

## I.  INTRODUCTION

  This matter comes before the Court on defendants' "Motion for Partial Summary Judgment" (Dkt. #14) and "Motion for Partial Summary Judgment on Federal Claims" (Dkt. #15).  Plaintiff alleges that she was discriminated against on the basis of her race and national origin and that she suffered retaliation as a result of her opposition to her employer's improper labor practices.  Plaintiff seeks to recover damages under 42 U.S.C. §1981, 42 U.S.C. §1983, and the Washington Law Against Discrimination.  Plaintiff also alleges state common law claims for wrongful discharge in violation of public policy, negligent supervision, negligent infliction of emotional distress and intentional infliction of emotional distress.  Defendants seek summary judgment on plaintiff's (1) state common law claims, (2) § 1981 and §1983 claims against defendant University of Washington, and (3) § 1981 claim against defendant Ratner.  In response, plaintiff Fanaye Turner voluntarily dismisses her federal claims against the University

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT-1

of Washington as well as her state law negligent supervision and negligent/reckless infliction of emotional distress claims, but opposes the remainder of defendants' motion.  For the reasons discussed below, defendants' motion for summary judgment on plaintiff's state law claims is granted.  Defendants' motion for summary judgment on plaintiff's federal claims in granted in part and denied in part.

## II.   FACTUAL BACKGROUND

Plaintiff was hired in 1997 to serve as the Education and Outreach Director for the University of Washington ("University") Engineered Biomaterials Program ("UWEB").  Defendant Buddy Ratner is a Professor of Chemical Engineering and Bio-Engineering at the University, is the Director of UWEB and was plaintiff's supervisor for nearly all of plaintiff's time at UWEB.  As the Education and Outreach Director, plaintiff's primary job function was to direct a program aimed at increasing participation by underrepresented groups in science.

Tom Grames was hired as a temporary employee to fill the position of Program Coordinator for the Education and Outreach Program on April 24, 2003.[1]  Over the course of his employment, Grames repeatedly voiced his desire to be hired in a permanent capacity.  His requests were echoed by plaintiff, who praised his job performance and made multiple requests to UWEB officials to have Grames' position converted to permanent status.  Despite plaintiff's efforts, Grames was notified that he was being terminated from UWEB on January 23, 2004.

Plaintiff's wrongful discharge claim centers around the allegation that she was constructively terminated as a result of her efforts to advocate on Grames' behalf.  Specifically, plaintiff contends that defendants retaliated against her for voicing concerns that Grames' continued temporary employment was unlawful and in violation of public policy.  The most

---

[1] Though plaintiff previously had supervisory authority over Grames position, Dr. Ratner had transferred supervisory authority over the position to UWEB administrator Jeri Staley-Earnst in early April 2003.  Plaintiff remained responsible for the actual operations of the Education and Outreach Program, giving Grames' work assignments, and overseeing his substantive performance.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT-2

explicit articulation of plaintiff's concerns about the legality of Grames' employment status, and

the central piece of evidence in her claim of wrongful termination, is contained in an e-mail she

sent to UWEB officials on January 23, 2004:

> Got the e-mail from Tom.  He is right.  This is a permanent position that
> should not be filled by a temporary.  Requiring him to continue working as
> temporary, and not posting the job, *violates UW and public policy*.

Declaration of Michael Madden (Dkt. #14), Ex. 12 (emphasis added).

## III.  DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if "a reasonable jury could return a

verdict for the nonmoving party" and a fact material if it "might affect the outcome of the suit

under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The

evidence is viewed in the light most favorable to the non-moving party.  Id.  "[S]ummary

judgment should be granted where the nonmoving party fails to offer evidence from which a

reasonable jury could return a verdict in its favor," Triton Energy Corp. v. Square D Co., 68

F.3d 1216, 1221 (9th Cir. 1995), or where there is a "complete failure of proof concerning an

essential element of the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's

position is not sufficient."  Trinton Energy Corp., 68 F.3d at 1221.

### B.    Unlawful Discharge

In order to succeed in a claim for wrongful discharge in violation of public policy, a

plaintiff must prove four elements: (1) the existence of a clear mandate of public policy (the

clarity element); (2) that discouraging the conduct in which the plaintiff engaged would

jeopardize the public policy (the jeopardy element); (3) that the public policy linked conduct

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT-3

1   caused the dismissal (the causation element); and (4) that the defendant cannot offer an

2   overriding justification for the dismissal.  Korslund v. Dyncorp Tri-Cities Servs., Inc., 156

3   Wn.2d 168, 178 (2005).

4        Whether a particular public policy clearly exists is a question of law.  Gardner v. Loomis

5   Armored, Inc., 128 Wn.2d 931, 937 (1996).  Courts "should not create public policy but instead

6   only recognize clearly existing public policy under Washington law."  Sedlacek v. Hillis, 145

7   Wn.2d 379, 390 (2001).  Plaintiff has satisfied this element of her claim.  The State of

8   Washington has articulated a clear public policy against using temporary employees for

9   positions of permanent public employment for extended periods of time.  At the time relevant to

10  this case, this policy was articulated in both WAC 251-01-415 and RCW 49.44.160.  WAC 251-

11  01-415 prohibited a temporary University employee from working more than 1050 hours "in any

12  twelve consecutive month period from the original date of hire or October 1, 1989, whichever is

13  later, in accordance with WAC 251-04-040(6)."  WAC 251-01-415(2).  RCW 49.44.160

14  expresses the legislature's desire to prohibit public employers from "misclassifying employees,

15  or taking other action to avoid providing or continuing to provide employment-based benefits to

16  which employees are entitled."

17       Plaintiff's claim for wrongful discharge in violation of public policy nevertheless fails

18  because she has not put forward any facts to support her contention that this public policy was

19  violated.  "[W]here there is no violation or potential violation of an enforceable law . . . a

20  plaintiff cannot rely on the state's interest in ensuring that its citizens comply with the law."

21  Sedlacek, 145 Wn.2d at 393.  Plaintiff argues that WAC 251-01-415 "clearly prohibited the

22  temporary employment of Mr. Grames for nearly nine months, and 1400 hours, without posting

23  the position or paying him benefits."  Response at p. 15.  Plaintiff's claim may have merit if

24  WAC 251-01-415 simply limited temporary employees to working no more than 1050 hours in

25  any twelve month period of time, but the regulation is not so broadly written.  Rather, the

26  regulation limits temporary employees to working no more than 1050 hours "in any twelve

27  ORDER GRANTING IN PART AND DENYING
    IN PART DEFENDANTS' MOTIONS FOR PARTIAL
28  SUMMARY JUDGMENT-4

consecutive month period *from the original date of hire* or October 1, 1989, whichever is later."

(emphasis added).  The use of "the original date of hire" is therefore not "an artificial stop and

start date" as plaintiff contends, but rather the clear direction of the regulation that plaintiff

herself relies on in support her claim.  The University policy on temporary employment mirrored

the restrictions on temporary employment contained in WAC 251-01-415:

> Temporary workers can work a maximum of 1050 hours in a year of
> employment.  That year begins on October 1, 1989 if they worked for the
> University before that date.  If they were employed after October 1, 1989,
> the year begins with their first date of employment.  That year remains the
> same whether they resign, leave for lack of work, or take another temporary
> position at the University.

Supplemental Declaration of Michael Madden (Dkt. #19), Ex. 7.

Using Grames' original date of hire of October 1, 1990 as the starting point,[2] it is clear

that he never exceeded the 1050 maximum hour limit imposed by WAC 251-01-415.  Grames

worked 828 hours for UWEB in the period between October 1, 2002 and September 30, 2003,

and 572 hours between October 1, 2003 and September 30, 2004.  WAC 251-01-415 cannot

serve as the basis for plaintiff's wrongful discharge in violation of public policy claim because

Grames never worked more than 1050 hours in any relevant twelve month period.

Plaintiff's reliance on RCW 49.44.170(1)(a) is equally unavailing.  Under RCW

49.44.170(1)(a), "[i]t is an unfair practice for any public employer to . . . [m]isclassify any

employee to avoid providing or continuing to provide employment-based benefits."  An

employee is misclassified under the statute if he or she is a long-term employee who is labeled

as "temporary" or some other label that "does not objectively describe the employee's actual

work circumstances."  RCW 49.44.170(1)(d).  The statute explicitly acknowledges that public

employers have the authority to classify employees as temporary "so long as the definitions and

eligibility rules are objective and applied on a consistent basis.  Objective standards, such as

---

[2] Plaintiff does not dispute that Grames' original date of hire with the Department of Cardiology
was October 1, 1990.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT-5

1   control over the work and the length of the employment relationship, should determine whether

2   a person is an employee who is entitled to employee benefits, rather than the arbitrary

3   application of labels, such as 'temporary' or 'contractor.'" Id.  As described above, the

4   University's policy on temporary workers utilized the same objective standards for determining

5   who properly can be classified as a temporary employee as WAC 251-01-415.  Plaintiff has

6   presented no evidence indicating that the University violated this policy in relation to Grames.

7   "[P]laintiff's arguably good faith belief in the righteousness of her conduct is too tenuous a

8   ground upon which to base a claim for wrongful discharge." Dicomes v. State, 113 Wn.2d 612,

9   623-24 (1989).  As such, plaintiff's allegation that defendants "misclassified" Grames as a

10  temporary employee also cannot serve as the basis for her wrongful discharge claim.  In the

11  absence of any material facts indicating that defendants actually violated a public policy,

12  plaintiff cannot satisfy the jeopardy element of her wrongful discharge claim.  Defendants'

13  motion for summary judgment on this claim is granted.

14  **C.      § 1981 Liability for Defendant Ratner**

15          Plaintiff voluntarily dismisses her §§ 1981 and 1983 claims against the University.  The

16  only remaining issue is whether defendant Ratner can be sued in his individual capacity directly

17  under § 1981.  Citing the Supreme Court's opinion in Jett v. Dallas Independent School District,

18  491 U.S. 701, 735 (1989), defendants argue that § 1983 is the exclusive remedy for violations of

19  rights guaranteed by § 1981 when the claim is made against a state actor.  Plaintiff argues that

20  Congress statutorily overruled Jett when it enacted the Civil Rights Act of 1991, which added

21  subsection (c) and provided that "[t]he rights protected by this section are protected against

22  impeachment by nongovernmental discrimination and impairment under color of State law."  42

23  U.S.C. § 1981(c).  For the reasons discussed below, plaintiff's § 1981 claim may proceed.

24          In Federation of African American Contractors v. City of Oakland, 96 F.3d 1204, 1205

25  (9th Cir. 1996), the Ninth Circuit held that § 1981(c) "statutorily overrules Jett's holding that 42

26  U.S.C. § 1983 provides the exclusive federal remedy against municipalities for violation of the

27  ORDER GRANTING IN PART AND DENYING
    IN PART DEFENDANTS' MOTIONS FOR PARTIAL
28  SUMMARY JUDGMENT-6

civil rights guaranteed by 42 U.S.C. § 1981." The court reasoned that permitting § 1981 suits directly against municipalities would not "disrupt federal civil rights litigation," because it would not impose any greater burden on government defendants who were already subject to suits under § 1983 for violations of § 1981. Defendants argue that <u>Federation</u> is limited to the question of municipal liability under § 1981, and that Congress did not intend to modify "the long-standing principle that § 1983 provides the exclusive remedy for race discrimination claims against state officials" by enacting § 1981(c). Reply to Federal Claims at p. 3.

The language of <u>Federation</u> does not support the limitation that defendants seek to impose on it:

> We infer from § 1981(c)'s identical treatment of private entities and governmental entities that § 1981(c) permits both an implied cause of action against private defendants and an implied cause of action against *governmental defendants*.

> The lack of legislative history announcing an express intent to overrule <u>Jett</u> by adding § 1981(c) does not preclude an implied cause of action against *state actors* under 42 U.S.C. § 1981.

96 F.3d at 1213 (emphasis added). The Ninth Circuit could have chosen to explicitly limit its reasoning to "municipalities," but it did not. The court's use of broad terms such as "governmental defendants" and "state actors," and the lack of any language indicating that the court's rationale should not apply to non-municipal government employees indicates that no such limitation should be read into the opinion.

Nor do defendants provide any Ninth Circuit case law to support their contention that <u>Federation</u>'s holding would not extend to state officials sued in their individual capacity.[3] In

---

[3] Defendants cite to a number of cases outside the Ninth Circuit to support their argument that § 1981(c) failed to overturn <u>Jett</u>, including <u>Felton v. Polles</u>, 315 F.3d 470, 482 (5th Cir. 2002), <u>Hill v. Taconic Developmental Disabilities Services Office</u>, 283 F. Supp.2d 955, 957 (S.D.N.Y. 2003), <u>Burbank v. Office of Attorney General of Connecticut</u>, 240 F. Supp.2d 167 (D. Conn. 2003), and <u>Johnson v. City of Franklin, Kentucky</u>, 2005 WL 1661975, *6 (W.D. Ky. 2005). These cases have marginal value in determining the question presented here as they do not consider, and are not bound by, <u>Federation</u>'s conclusion that <u>Jett</u> was, at least in part, overturned by § 1981(c).

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT-7

1   both district court cases cited by defendants, <u>Pittman v. State</u>, 2005 WL 1899379, *2 (D. Or.

2   2005) and <u>Gutierrez v. State of Washington, Department of Social and Health Services</u>, 2005

3   WL 2346956, *4 (E.D. Wa. 2005), the question before the court was not whether a state actor

4   could be sued in his or her individual capacity under § 1981, but rather whether a state could be

5   sued directly under § 1981.  This distinction is important, because the court in <u>Pittman</u>

6   concluded that permitting § 1981 suits against states would impose "a substantive change on

7   federal civil rights law," as states, unlike the municipalities in <u>Federation</u>, were not already also

8   subject to suit under § 1983.  <u>Id.</u> at *4.  The court in <u>Gutierrez</u> rested its decision on the

9   Eleventh Amendment bar on actions against the state under § 1981.  Neither concern is present

10  here.  Like in <u>Federation</u>, and unlike <u>Pittman</u> and <u>Gutierrez</u>, defendant Ratner is already subject

11  to suit under § 1983 for violation of § 1981 rights.  <u>See</u> <u>Cerrato v. San Francisco Cmty. Coll.</u>

12  <u>Dist.</u>, 26 F.3d 968, 973 (9th Cir. 1994).  Nor is Ratner protected from suit by the Eleventh

13  Amendment.  <u>Id.</u>  Because the Eleventh Amendment and prudential concerns that were present

14  in <u>Pittman</u> and <u>Gutierrez</u> are not present here, they provide no basis for concluding that

15  <u>Federation</u>'s interpretation of § 1981(c) would not apply in this instance.  Plaintiff may proceed

16  with her § 1981 claims against defendant Ratner in his individual capacity.

## IV.  CONCLUSION

17

18      For all the foregoing reasons, defendants' motion for partial summary judgment (Dkt.

19  #14) is GRANTED.  Defendants' motion for summary judgment on plaintiff's federal claims

20  (Dkt. #15) is GRANTED IN PART and DENIED IN PART.

21

22      DATED this 4th day of June, 2007.

23

24

25                                      Robert S. Lasnik
                                        United States District Judge
26

27  ORDER GRANTING IN PART AND DENYING
    IN PART DEFENDANTS' MOTIONS FOR PARTIAL
28  SUMMARY JUDGMENT-8